1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLENE CHRISTY PERCIVAL,<br><br>                Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | NO.  C3:13-CV-05732-RBL-JLW<br><br><br>REPORT AND<br>RECOMMENDATION |

<u>BASIC DATA</u>

Type of benefits sought:

     (X) Supplemental Security Income – Disability

     (X) Disability Insurance

Plaintiff:

     Sex: Female

     Age: 52 at application, 54 at ALJ hearing

Principal Disabilities Alleged by Plaintiff:  left leg pain, left hip pain, sciatica, left knee pain, bursitis in both shoulders, compressed disks, periodic depression, dyslexia

Disability Allegedly Began: October 1, 2009

Principal Previous Work Experience: Fast food manager, cook, salesperson, gas station attendant

Plaintiff Last Worked: 2008

Education Level Achieved by Plaintiff: some college

REPORT AND RECOMMENDATION - 1

1

2

PROCEDURAL HISTORY – ADMINISTRATIVE

3

Before ALJ Kimberly Boyce:

      Date of Hearing: April 18, 2012

4

      Date of Decision: May 11, 2012

5

      Appears in Record at:  Decision AR 27-39, Hearing Transcript AR 47-95

6

      Summary of Decision:

7

      Claimant has not engaged in substantial gainful activity since her alleged onset date. She has severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, left lower extremity varicose veins status post surgical ligation stripping, and obesity. She also has non-severe impairments including dyslexia/depression/psychological impairments. None of these impairments, alone or in combination, meet or medically equal a Listing. Based on her impairments, Claimant has the residual functional capacity (RFC) to lift and carry ten pounds frequently and fifteen pounds occasionally. She can sit for six hours and stand/walk for two hours in an eight hour workday. She can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. She should avoid exposures to hazards. A Vocational Expert (VE) testified that with this RFC, Claimant can perform her past relevant work as a fast food manager as she had actually performed the job. Additionally, the VE determined that Claimant could perform work as a tube room cashier and a check cashier. Both of these representative jobs are available in significant numbers in the economy. Therefore, the Claimant is not disabled.

8

9

10

11

12

13

14

Before Appeals Council:

15

      Date of Decision: June 20, 2013

16

      Appears in Record at: AR 1-4

17

      Summary of Decision: Review Declined

18

19

PROCEDURAL HISTORY – THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

20

Brief on Merits Submitted by (X) Plaintiff  (X) Commissioner

21

22

RECOMMENDATION OF

23

UNITED STATES MAGISTRATE JUDGE

24

      (X)  Affirm

REPORT AND RECOMMENDATION - 2

1

2

SUMMARY OF RECOMMENDATION

3        While Plaintiff alleges a myriad of issues, none of her contentions have sufficient merit

4   to require reversal. The ALJ committed no harmful error in evaluating the medical opinions.

5   Based on the psychological opinions, Plaintiff's mental impairments cause minimal limitations

6   and they are therefore non-severe. Her knee impairment does not meet Listing 1.02A, even in

7   combination with her obesity. Given the evidence, the ALJ did not err in defining Plaintiff's

8   RFC or determining that she could perform her past relevant work as actually performed.

9   Finally, the VE adequately testified to the transferability her skills to cashier type employment.

10  The decision of the ALJ should be affirmed.

STANDARD OF REVIEW

11       Pursuant to 42 U.S.C. § 405(g), this Court must set aside the Commissioner's denial of

12  Social Security benefits when the ALJ's findings are based on legal error or not supported by

13  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

14  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

15  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

16  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

17  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

18  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

19  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

20  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

21  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

22  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

23  must be upheld.  *Id.*

24

REPORT AND RECOMMENDATION - 3

1

## EVALUATING DISABILITY

2   The claimant bears the burden of proving that she is disabled within the meaning of the

3   Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal

4   citations omitted). The Act defines disability as the "inability to engage in any substantial

5   gainful activity" due to a physical or mental impairment which has lasted, or is expected to

6   last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

7   1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such

8   severity that she is unable to do her previous work, and cannot, considering her age, education,

9   and work experience, engage in any other substantial gainful activity existing in the national

10  economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th

11  Cir. 1999).

12   The Commissioner has established a five-step sequential evaluation process for

13  determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

14  404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

15  step five, the burden shifts to the Commissioner. *See also Valentine v. Comm'r of Soc. Sec.*

16  *Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

17

## ISSUES ON APPEAL

18   1.  Did the ALJ properly consider the medical opinion evidence?

19   2.  Did the ALJ err in finding that Plaintiff's mental limitations are not severe, and
        in omitting these impairments from her RFC?

20
     3.  Did the ALJ erroneously determine that Plaintiff does not meet Listing 1.02A?

21
     4.  Did the ALJ err in determining that Plaintiff can return to her past relevant
22      work?

23   5.  Did the ALJ properly determine Plaintiff's transferable skills?

24   6.  Did the ALJ include all appropriate limitations in the hypothetical questions to
        the VE?

REPORT AND RECOMMENDATION - 4

1

2                                   <u>DISCUSSION</u>

3       I.          <u>Medical Evidence</u>

4           The ALJ evaluates medical evidence as part of the record when determining disability.

5   20 C.F.R § 416.927(b). If contradicted by another doctor, the opinions of treating and

6   examining physicians may only be rejected for specific and legitimate reasons based on

7   substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1995).

8           A.  *Raymond West, M.D.*

9           Dr. Raymond West examined Plaintiff in June 2008.[1] AR 337-45. He opined that

10  Plaintiff "is able to stand and to walk for 4-5 hours cumulatively in an eight-hour day

11  providing she is able to sit and/or lie down from time to time." AR 345. Plaintiff can sit for 5-6

12  hours in a comfortable seat. AR 345. Additionally, she "is able to bend, at least occasionally.

13  Squatting is difficult, although possible, because of the problem in assuming an erect position.

14  Kneeling, crawling and climbing are not indicated." AR 345.

15          The ALJ gave significant weight to this opinion, except for the assessment that

16  kneeling, crawling, or climbing is "not indicated." AR 36.  The ALJ determined this statement

17  on postural limitations to be vague and chose to follow more "articulate" opinions. AR 36.

18  Instead of completely restricting these posturals, the ALJ limited Plaintiff to occasional

19  stooping, kneeling, crouching, crawling and climbing ramps or stairs. AR 33. Plaintiff alleges

20  that the ALJ did not provide specific and legitimate reasons to reject these portions of the

21  medical opinion, because Dr. West's assessment was based on physical examination in which

22  Plaintiff performed lower extremity maneuvers poorly. AR 343-5.

23  _____
            [1] Neither the ALJ nor the parties note that Dr. West's June 2008 examination and
24  assessment occurred more than one year prior to Plaintiff's alleged onset date of October 1,
    2009.

REPORT AND RECOMMENDATION - 5

1    The ALJ declined to accept Dr. West's conclusion that some posturals were "not

2    indicated" as a categorical prohibition against these activities, for essentially two reasons: the

3    ALJ found Dr. West's conclusions "vague," and the ALJ accepted instead other medical

4    opinions.  Dr. West's conclusion seems clear enough: in saying that kneeling, crawling and

5    climbing were "not indicated" for Plaintiff, Dr. West was saying, in doctor-speak, that Plaintiff

6    cannot do them.  The ALJ could not reasonably find this statement was "vague." But the ALJ's

7    other reason was valid: he preferred to accept other medical evidence which contradicted Dr.

8    West's view on this question. Specifically, the ALJ accepted the views of Drs. Arcega (AR

9    111) and Virji (AR 135) and the first report from Dr. Staker (AR 389). AR 36-7. As previously

10   noted, it is the ALJ's responsibility to resolve conflicts in the medical evidence.  The ALJ did

11   so here.

12        In any event, the ALJ's definition of Plaintiff's postural limitations has minimal impact

13   on Plaintiff's ability to perform the work identified by the ALJ.  Plaintiff's description of her

14   past relevant work as a fast food manager includes no crouching, crawling or climbing, and

15   only fifteen minutes of kneeling to retrieve printouts from a printer located under a counter.

16   AR 57, 298. The additional jobs of tube room cashier and check cashier include no kneeling,

17   stooping, crouching, crawling, or climbing. DICOT #211.482-010, #211.462-026.

18        The exclusion of some of the postural limitations listed by Dr. West was not error

19   requiring reversal.

20        B.  *Lynn L. Staker, M.D.*

21        Dr. Lynn Staker performed two examinations and provided two assessments of

22   Plaintiff's functional capacity. AR 385-9, 431-35. In September 2010, Dr. Staker opined that

23   Plaintiff can stand for eight hours and sit for six hours in an eight hour workday, without

24   postural limitations. AR 388-9. Plaintiff can lift twenty pounds occasionally and five pounds

REPORT AND RECOMMENDATION - 6

frequently. AR 388. The ALJ gave significant weight to this assessment, except that Plaintiff can frequently lift and carry more weight than included in the opinion. AR 36. Plaintiff alleges that the ALJ erroneously deviated from Dr. Staker's lifting limitations.

The ALJ determined that Plaintiff can frequently lift/carry ten pounds and occasionally lift/carry fifteen pounds. AR 33. This limitation is supported by Plaintiff's own testimony at the hearing, where Plaintiff testified that she can lift fifteen pounds. AR 66. Given Plaintiff's own assessment of her capabilities, the ALJ did not err in setting the lift/carry capacity above that of Dr. Staker. Additionally, the lift/carry restriction has no impact on whether Plaintiff can perform her past relevant work or the additional jobs cited by the VE. As performed, Plaintiff's past relevant work as a fast food manager required no lifting or carrying. AR 298. The tube room cashier and check cashier jobs are sedentary jobs with only occasional lifting up to ten pounds and frequent lifting of a "negligible" amount. DICOT #211.482-010, #211.462-026.

Dr. Staker assessed Plaintiff's functional capabilities again in February 2011. AR 431-5.  However, the ALJ rejected Dr. Staker's February 2011 functional assessment that Plaintiff is "very limited, less than sedentary full time," and that she "most likely [he] is not going to be that successful." AR 37, 431-5. The ALJ found "an inadequate basis for Dr. Staker to deviate from her September 2010 opinion." AR 37. Plaintiff contends that the ALJ failed to give specific and legitimate reason to reject this evidence.

To support rejection of Dr. Staker's February 2011 assessment, the ALJ stated that the only support for the change in opinion was additional imaging and Plaintiff's complaints of knee pain. AR 37. Dr. Staker noted "[h]er left knee has become a lot more painful and she has significant degenerative arthritis of the medial compartment of the left knee." AR 435. While Plaintiff's subjective complaints and the imaging support Dr. Staker's opinion, examination and activities of daily living are incompatible with the alleged level of impairment. As noted

by the ALJ, Dr. Staker's medical exam shows tenderness but, almost full range of motion and no effusion. AR 434. Subsequent examinations have similar results. In August 2011 Plaintiff's left knee showed tenderness but exhibited full range of motion, normal flexibility and alignment, and no swelling, effusion, or laxity. AR 463, 469. Examination in December 2011 showed full range of motion, no joint deformity, swelling, heat, erythema or effusion. AR 456. These normal examinations do not support Dr. Staker's second assessment.

Plaintiff's activities also demonstrate more functionality than alleged. In February 2011, Plaintiff reported that she cooks and cleans for a friend in exchange for rent. AR 284. Plaintiff reported exercising multiple times per week and a "moderate" activity level in August 2011. AR 462. In August 2011, she also injured her left big toe when she "was helping a friend move yesterday and dropped an 8 foot solid wood coffee table." AR 465. These activities are not consistent with Dr. Staker's extreme assessment in February 2011. The ALJ gave specific and legitimate reasons supported by substantial evidence in the record to reject this assessment.

II.     Mental Impairments

The ALJ determined that Plaintiff's mental impairments are non-severe. AR 30. Plaintiff challenges that finding and the ALJ's evaluation of her examining psychological professionals. The claimant must prove the existence of a severe impairment by providing medical evidence. 20 C.F.R. §§ 404.1508, 416.908. "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (*quoting* S.S.R. No. 96–3(p) (1996)).  The ALJ thoroughly discusses the medical expert opinions and Plaintiff's activities of daily living to support the finding that her depression and dyslexia "do not cause more than minimal limitations in her ability to perform basic mental work activities." AR 30.

A.  *Norma L. Brown, Ph.D.*

Dr. Norma Brown completed a psychological assessment of Plaintiff in September 2010. AR 368-82. Dr. Brown found no limitations in most cognitive and social factors, and only mild limitations in all categories except for a moderate limitation in her ability to care for herself based on her poor dental health. AR 371. Dr. Brown did not observe problems with chronic pain and headaches, but stated that these symptoms "may compromise social interaction, result in cognitive compromise (more errors), short-term memory difficulties and shortened or distractible attention." AR 369. Despite this speculation, Dr. Brown's objective testing demonstrated that Plaintiff's concentration was normal. AR 374. The ALJ gave significant weight to the opinion that Plaintiff had no limitations in cognitive and social limitations. AR 31.

Plaintiff contends that the ALJ erroneously ignored Dr. Brown's statement that she "may" have problems with her short-term memory and distraction. The ALJ "need not discuss *all* evidence presented," but "must explain why significant probative evidence has been rejected." *Vincent o/b/o Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted).  Given the objective medical evidence that showed minimal cognitive and social limitations, Dr. Brown's speculation that Plaintiff "may" experience these issues is neither significant nor probative. The ALJ did not err by omitting any limitations pertaining to concentration.

B.  *Harry Atlas, Ph.D.*

Dr. Harry Atlas also examined Plaintiff and provided an assessment. AR 442-5. Upon examination, he found that Plaintiff's mood seemed positive, although she claimed some depression related to her pain. AR 444. The mental status exam showed that her memory and understanding are "very good." AR 445. As for concentration, she performed "perfectly on

serial sevens all the way down to the 50s," perfectly executed the three step command, but had a slight mistake spelling "world" backward. AR 444.  In his functional assessment, Dr. Atlas opined that "[s]ustained concentration and persistence is somewhat problematic and it has clearly deteriorated in the last few years." AR 445. The ALJ expressly found that Plaintiff did not have any difficulties with concentration and persistence. AR 32. The ALJ rejected this opinion because Dr. Atlas relied mainly on Plaintiff's self-report for information about her problems with concentration. AR 32.

Dr. Atlas' report demonstrates reliance on Plaintiff's self-report. "She claims that she cannot concentrate for more than a half an hour, and when she is reading, she has to re-read sections. This is something that was not true before. She double checks what she does when she is sewing and her focus is not as good as it was." AR 444. Other than a mistake in spelling "world" backward, this information provided the background for Dr. Atlas' opinion that Plaintiff had concentration and persistence issues. The ALJ may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ's determination that Plaintiff's statements are not entirely credible is unchallenged on appeal. AR 33. Therefore, the ALJ did not err in discounting the portion of Dr. Atlas' assessment supported mainly by Plaintiff's subjective reports.

Given the properly considered psychological opinions, Plaintiff experiences minimal limitations as a result of her mental impairments. Her ADL's support this finding, as well. She can pay her bills, sew, play computer games, and read. AR 288, 373, 444. Her functional report states that she usually has no problem paying attention or finishing movies, conversation and reading. AR 289. Based on substantial evidence in the record, the ALJ did not err by

REPORT AND RECOMMENDATION - 10

1    concluding that any mental impairments have minimal effect on her ability to perform basic

2    work functions and are non-severe.

3           C.  Listing 1.02A

4           At Step 3, the ALJ must determine whether a claimant's impairments meet or medically

5    equal an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1.  20 C.F.R. §§

6    404.1520(a)(4)(ii), 416.920(a)(4)(ii). If a claimant's combined impairments amount to a

7    Listing, and meets the duration requirement, the claimant is disabled. 20 C.F.R. §§

8    404.1520(d), 416.920(d). Plaintiff has the burden of proving she meets a Listing. *Roberts v.*

9    *Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). Here, the ALJ determined that Plaintiff's

10   impairments did not meet or medically equal Listing 1.02A of the Musculoskeletal Listings of

11   Impairments. "Listing 1.02A is not met because the claimant has repeatedly exhibited normal

12   functioning in her left knee. Even considering the claimant's obesity, the combination of

13   impairments is not equivalent in severity to a listed impairment." AR 32. Plaintiff disagrees

14   with this finding.

15          Listing 1.02A of the Musculoskeletal Impairments states:

16          1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by
             gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous
17          ankylosis, instability) and chronic joint pain and stiffness with signs of
             limitation of motion or other abnormal motion of the affected joint(s), and
18          findings on appropriate medically acceptable imaging of joint space narrowing,
             bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of
19          one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in
             inability to ambulate effectively, as defined in 1.00B2b;
20
        1.00B2b:
21          (2) To ambulate effectively, individuals must be capable of sustaining a
             reasonable walking pace over a sufficient distance to be able to carry out
22          activities of daily living. They must have the ability to travel without
             companion assistance to and from a place of employment or school. Therefore,
23          examples of ineffective ambulation include, but are not limited to, the inability
             to walk without the use of a walker, two crutches or two canes, the inability to
24          walk a block at a reasonable pace on rough or uneven surfaces, the inability to

REPORT AND RECOMMENDATION - 11

1     use standard public transportation, the inability to carry out routine ambulatory
2     activities, such as shopping and banking, and the inability to climb a few steps
      at a reasonable pace with the use of a single hand rail. The ability to walk
3     independently about one's home without the use of assistive devices does not, in
      and of itself, constitute effective ambulation.

4          A February 2011 x-ray shows "near bone-on-bone degenerative arthritic changes of the

5   medial compartment" of Plaintiff's left knee. AR 434. This satisfies the imaging requirements

6   of Listing 1.02 requirements. However, Plaintiff cannot demonstrate the "signs of limitation of

7   motion or other abnormal motion of the affected joint." 20 C.F.R. Part 404, Subpt. P, App. 1 §

8   1.02. As seen above, her physical examinations repeatedly show normal range of motion. In

9   February, her knee was tender but, had almost full range of motion and no effusion. AR 434.

10  An August 2011 exam also showed tenderness but exhibited full range of motion, normal

11  flexibility and alignment, and no swelling, effusion, or laxity. AR 463, 469. Examination in

12  December 2011 showed full range of motion, no joint deformity, swelling, heat, erythema or

13  effusion. AR 456.

14        Furthermore, Plaintiff cannot prove her inability to ambulate effectively. She testified

15  as to difficulty walking to the hearing and instability and popping in her knee. AR 51-3. But,

16  the ALJ rejected Plaintiff's testimony based on credibility issues. AR 33. Additionally,

17  Plaintiff only periodically uses a single cane, which was not medically prescribed as necessary.

18  AR 52-3. This does not equate to the two canes, two crutches, or walker required by Listing

19  1.02A. 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00B2.  Plaintiff does not meet her burden of

20  proving that she satisfies the Listing.

21        Plaintiff also contends that the ALJ insufficiently considered her obesity as an

22  exacerbating factor when determining whether she meets Listing 1.02. She alleges that the ALJ

23  erred by failing to obtain a medical expert to determine whether the combination of her obesity

24  and lower extremity impairment rose to the level of a Listing.

The ALJ addressed Plaintiff's obesity in the decision. AR 32, 34. She identified obesity as a severe impairment. AR 29. She considered obesity in the Listing discussion. "Although her obesity likely exacerbates the claimant's exertional limitations, the claimant's medical record and reported activities indicate that she can perform sedentary work." AR 32-3. And, the ALJ noted that Plaintiff's obesity "likely adds to her functional limitations" when formulating the RFC. AR 34. The ALJ considered Plaintiff's obesity, and took it into account, at all stages of the analysis. Plaintiff fails to show that the ALJ improperly disregarded any limitations stemming from her obesity. *See*, *Valentine*, 574 F.3d at 692.

Plaintiff contends that the evidence of her worsening knee arthritis triggered a requirement for new evidence to assess the impact of her obesity on the changed condition. Under SSR 96-6p, the ALJ should acquire an updated medical opinion, "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p. But, the ALJ did not find new evidence requiring further inquiry. Dr. Staker's February 2011 examination noted increased deterioration of the left knee on x-ray, but the ALJ properly rejected the accompanying assessment. As noted above, subsequent examinations in August and December 2011 showed largely normal knee function. The ALJ had sufficient evidence of Plaintiff's knee function as impacted by her obesity based on these reports. The ALJ fully considered obesity at all required steps of her analysis.

D.  Past Relevant Work

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Commissioner*, 533 F.3d 1155, 1166 (9th Cir. 2008)

1    (internal citations omitted).  The ALJ determined that, given her RFC, Plaintiff could perform

2    her past relevant work as a fast food manager as actually performed. AR 38. Plaintiff alleges

3    several errors.

4        As a preliminary issue, Plaintiff argues that the VE's testimony lacked credibility and

5    failed to resolve the discrepancies between his testimony and Dictionary of Occupational

6    Titles. Plaintiff specifically notes that her past relevant work as a fast food assistant manager

7    was incorrectly assessed as fast food manager, and that it is light work rather than sedentary as

8    required by her RFC. The VE testified that based on Plaintiff's description of the job as she

9    performed it, Plaintiff carried out enough managerial tasks to use fast food manager as her past

10   relevant work. AR 82. This is within the VE's area of expertise. The ALJ noted that the DOT

11   exertionally precluded Plaintiff's work as a fast food manager, but the VE testified that she

12   could perform the job based on her description of her past work. AR 86.

13       "A claimant must be able to perform her past relevant work either as actually

14   performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d

15   1081, 1083 (9th Cir. 2002). Plaintiff's work history is a source for how she performed her

16   previous work. *Id*. Plaintiff provided a work history report describing her past employment as a

17   fast food assistant manager. According to her own breakdown of her workday, Plaintiff walked

18   for one hour, stood for one hour, sat for four hours, knelt for fifteen minutes, and did not stoop,

19   crouch, or crawl. AR 298. She also reported that she did not have to lift or carry because her

20   crew performed those tasks as needed. AR 298.

21       Based on Plaintiff's own description of her job as fast food assistant manager and her

22   RFC, the VE testified that she is capable of this past relevant work as performed. AR 86.

23   According to the RFC and hypothetical, Plaintiff can lift and carry ten pounds frequently and

24   fifteen pounds occasionally, can stand/walk for two hours, sit for six hours and occasionally

climb ramps and stairs, stoop, kneel, crouch and crawl. AR 86. These limitations are all accommodated by Plaintiff's past work as she described her performance.

Plaintiff contends that her need to take breaks to elevate her leg would prevent her from working as a fast food manager. However, the record does not support Plaintiff's claim that she is required to elevate her leg or lie down during breaks. The ALJ specifically rejected this contention. "[C]laimant reported needing to elevate her legs occasionally when sitting. No physician or other medical treatment provider in the record has stated that the claimant requires such posture when seated." AR 36. Plaintiff, alone, asserts this need in her hearing testimony. AR 77-8. As mentioned above, the ALJ's determination that Plaintiff's statements are not entirely credible is unchallenged on appeal. The ALJ properly excluded this limitation from the RFC. Therefore, the lack of opportunity to lie down or elevate her leg does not preclude Plaintiff from her past relevant work as actually performed.

E. Transferable Skills

The ALJ must assess the transferability of Plaintiff's skills when determining whether Plaintiff can adapt to other work available in the economy.

> When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation. When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision.

SSR 82-41. Plaintiff contends that the ALJ failed to determine her acquired work skills before determining that she could perform the jobs of tube room cashier and check cashier.

During the hearing, the ALJ asked the VE about transferable skills. AR 89. The VE specifically identified cashiering. "[S]he has done cashiering and there are a couple of cashiering jobs that are sedentary." AR 89. The ALJ then included this information in the

REPORT AND RECOMMENDATION - 15

1    written decision. "The claimant has acquired work skills from past relevant work. The

2    vocational expert testified that the claimant's past relevant work as a fast food manager was

3    skilled with a specific vocational preparation code of five (SVP 5) and acquired the skill of

4    cashiering." AR 38. The two additional jobs then cited by the ALJ include cashiering. AR 39.

5    This satisfies the fact finding required for transferability.

6              F.   RFC and Hypotheticals

7         As her last issue, Plaintiff makes the general contention that the ALJ failed to include all

8    limitations in her RFC and the hypotheticals to the VE, specifically noting her concentration

9    issues due to mental impairments and the need to elevate her legs or lie down to rest during

10    breaks. This is merely a restatement of the previously addressed arguments concerning the

11    properly discounted evidence. As a result, no error is established. *See Stubbs-Danielson v.*

12    *Astrue*, 539 F.3d 1169, 1175-6 (9th Cir. 2008).

13                        CONCLUSION

14         For the foregoing reasons, the Court recommends that this case be AFFIRMED and the

15    case DISMISSED.  A proposed order accompanies this Report and Recommendation.

16         Objections to this Report and Recommendation, if any, must be filed with the Clerk

17    and served upon all parties to this suit no later than fourteen (14) days after the date on which

18    this Report and Recommendation is signed.  If no timely objections are filed, the Clerk shall

19    note this matter for the earliest Friday after the deadline for objections, as ready for the

20    Court's consideration. Failure to file objections within the specified time may affect a party's

21    right to appeal.

22         If objections are filed, any response is due within fourteen (14) days after being served

23    with the objections.  A party filing an objection must note the matter for the court's

24

REPORT AND RECOMMENDATION - 16

1   consideration fourteen (14) days from the date the objection is filed and served.  Objections

2   and responses shall not exceed twelve pages.

3

4          DATED this 16th day of December, 2014.

5

6                                                    _____

7                                                    JOHN L. WEINBERG
                                                     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 17